2022 IL App (2d) 200416
No. 2-20-0416
Opinion filed February 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03-CF-1598 |
| CHARLES M. HILL, | ) ) ) | Honorable David Paul Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1   Following a jury trial, defendant, Charles M. Hill, was found guilty of the first-degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) of a cab driver on July 16, 2003, when defendant was 17 years old. Defendant was initially sentenced to 48 years' imprisonment, but he was later resentenced to 40 years' imprisonment. Defendant appeals from the resentencing order, arguing that (1) the truth in sentencing statute is unconstitutional as applied, because it requires that juvenile defendants such as himself serve 100% of their sentences without the possibility of parole, and (2) the trial court abused its discretion in sentencing him to 40 years' imprisonment in light of extensive mitigating evidence including his expression of remorse and his rehabilitative potential. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant was found guilty on September 15, 2006, and originally sentenced on January 17, 2007. Defendant appealed, and this court affirmed. *People v. Hill*, No. 2-07-0076 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4     Defendant filed a postconviction petition (see 725 ILCS 5/122-1 *et seq.* (West 2008)) on September 17, 2009, which the trial court summarily dismissed. We affirmed the summary dismissal on appeal. *People v. Hill*, No. 2-09-1157 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5     On December 29, 2014, defendant sought leave to file a successive postconviction petition. The trial court denied him leave, and this court affirmed. *People v. Hill*, 2016 IL App (2d) 150225-U.

¶ 6     Defendant thereafter again sought leave to file a successive postconviction petition, this time through counsel. The trial court granted him leave to do so on June 2, 2017. Defendant filed his second petition that day, alleging that he received a *de facto* sentence of life imprisonment, in violation of the eighth amendment's ban on cruel and unusual punishment, and was therefore entitled to a new sentencing hearing under *Miller v. Alabama*, 567 U.S. 460 (2012), in which the mitigating factors of his youth could be considered. The State filed a motion to dismiss, which the trial court denied, and then filed an answer. The parties later agreed to stay the proceedings pending the outcome of our supreme court's decision in *People v. Buffer*, 2019 IL 122327, which was decided on April 18, 2019. The State filed an amended answer conceding that, under *Buffer*, defendant was entitled to a resentencing hearing because he was a juvenile at the time of the offense and met the qualifications outlined in *Buffer*. The trial court granted defendant's successive postconviction petition and scheduled a resentencing hearing.

¶ 7        The resentencing hearing took place on December 13, 2019. During the hearing, defense counsel raised the issue that the truth in sentencing statute was unconstitutional as applied to defendant.

¶ 8        The trial court made its sentencing ruling on February 28, 2020; we summarize its findings. For the statutory factors in aggravation (730 ILCS 5/5-5-3.1 (West 2020)), the trial court found that defendant had a history of prior delinquency or criminal activity at the time he committed the offense; that the sentence was necessary to deter others; and that he was on probation for another offense at the time of the murder. It found that none of the traditional statutory mitigating factors applied. See 730 ILCS 5/5-5-3.1 (West 2020). For the statutory factors regarding juveniles (730 ILCS 5/5-4.5-105(a) (West 2020)), the trial court found that defendant was under 18 at the time of the offense, seven days before his 18th birthday. There was no evidence that defendant suffered from any cognitive or developmental disabilities. Regarding the ability to consider the risks and consequences of his behavior, defendant was under 18 but was "very street smart" based on his experience in the criminal justice system. The trial court thought that defendant knew that he was going to kill somebody when he pulled the trigger, but it did not think that defendant considered the long-term consequence of him spending most of his life in prison. The factor encompassing defendant's family, home environment, and educational and social background was mitigating, as was his rehabilitation potential.

¶ 9        The trial court continued, finding that the circumstances of the offense carried great weight because they were "inexcusable." Defendant and some other people took a cab ride with the plan to run away from the cab without paying the fare. Defendant chose to engage in the plan armed with a fully loaded handgun, which he used to fire multiple rounds when the ride was over, and several of the rounds struck the cab driver. The driver was not armed or being aggressive, and

defendant had no excuse for killing him. For the factor of his degree of participation and specific role in the offense, defendant was the one who brought the gun and committed the murder, so this factor weighed heavily against him. He also had a prior criminal history. Defendant was able to meaningfully participate in his defense. He was currently very remorseful, but, at the time of the offense and while out on bond, he thought he was going to get away with the crime, as evidenced by how he acted at the time of the guilty verdict and his committing new offenses while on bond. The trial court stated that, further, defendant fathered two children while on bond, which was not a responsible decision. The trial court also considered the victim impact statement from the victim's mother, which it gave great weight.

¶ 10    The trial court stated that it was going to exercise its discretion and decline to impose the 25-year sentencing enhancement for the use of a firearm. It sentenced defendant to 40 years' imprisonment and then stated, "Truth in sentencing does apply in this case, so I am specifically finding that this case—this sentence is to be served at a hundred percent."

¶ 11    Defendant filed a motion to reconsider the sentence on March 27, 2020, in which he included the argument that the truth in sentencing statute was unconstitutional as applied. The trial court denied the motion on June 24, 2020.

¶ 12    Defendant timely appealed.

¶ 13                              II. ANALYSIS

¶ 14                       A. Truth in Sentencing Statute

¶ 15    Defendant first argues that the truth in sentencing statute is unconstitutional as applied to juvenile homicide defendants like him under Illinois's proportionate penalties clause, because the statute mandates that defendants convicted of first-degree murder serve 100% of their prison sentences without the possibility of parole (see 730 ILCS 5/3-6-3(a)(2)(i) (West 2020)). The

proportionate penalties clause states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 16    Defendant recognizes that this court recently rejected the same argument that defendant raises, in *People v. Johnson*, 2020 IL App (2d) 170646. There, the defendant argued that the truth in sentencing statute violated the proportionate penalties clause as well as the eighth amendment's ban on cruel and unusual punishment (U.S. Const., amend. VIII), both facially and as applied. *Johnson*, 2020 IL App (2d) 170646, ¶ 7. The defendant's "as applied" argument was premised on *Miller*, 567 U.S. 460, which held that it was a violation of the eighth amendment to sentence a juvenile defendant to mandatory life imprisonment without the possibility of parole. *Johnson*, 2020 IL App (2d) 170646, ¶ 4. We stated that the court in *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 58, had already addressed the defendant's argument, holding that the truth in sentencing statute was not unconstitutional in a situation where the juvenile defendant was convicted of first-degree murder based on accountability and sentenced to 30 years' imprisonment. *Johnson*, 2020 IL App (2d) 170646, ¶ 12. We further stated that, because the defendant's eighth amendment claim based on *Miller* failed, so did his claim under the proportionate penalties clause, as the proportionate penalties clause was " 'co-extensive with the eighth amendment's cruel and unusual punishment clause.' " *Id.* ¶ 16 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 106).

¶ 17    Defendant argues that, contrary to our statement in *Johnson*, the proportionate penalties clause is not coextensive with the eighth amendment. Defendant cites *People v. Clemons*, 2012 IL 107821, ¶ 40, where our supreme court stated that the proportionate penalties clause was not synonymous with the eighth amendment. The court stated:

"Although a relationship may exist between the first clause of article I, section 11, and the eighth amendment, that relationship is not entirely clear. What is clear is that the limitation on penalties set forth in the second clause of article I, section 11, which focuses on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision." *Id.*

Defendant recognizes that the supreme court subsequently stated in *Patterson*, 2014 IL 115102, ¶ 106, that the defendant's eighth amendment challenge was without merit and that, "[b]ecause the Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause [citation], we also reject [the] defendant's challenge under our state constitution." However, he notes that in *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 70, the appellate court stated that it did not believe that the *Patterson* court "intended to depart from its prior statements in *Clemons*; rather, it appears the court meant only that like the eighth amendment, the proportionate penalties clause does not apply unless a penalty has been imposed."

¶ 18    Defendant further cites *People v. Horta*, 2016 IL App (2d) 140714, ¶ 62, in which this court stated that the supreme court had not spoken consistently on the issue of whether the two provisions were coextensive and further that, because "there [was] no dispute that the reach of the state provision is at least as great as that of the federal one," we would limit our analysis to the proportionate penalties clause. Defendant argues that the proportionate penalties clause guarantees greater sentencing protections than the eighth amendment, such that the *Johnson* panel could not legally dispose of the merits of a proportionate penalties challenge based on its eighth amendment analysis.

¶ 19    The State argues that defendant is incorrect that *Patterson* did not purport to overrule *Clemons*. The State highlights that the *Patterson* court stated, "Defendant's challenge is raised

pursuant to the eighth amendment and Illinois's proportionate penalties clause. It does not implicate *ex post facto* law, and, in any event, this court is not bound by decisions cited by defendant (*People v. Clemons*, 2012 IL 107821, ¶ 32)." *Patterson*, 2014 IL 115102, ¶ 103. The State also disagrees with defendant's assertion that we did not rule on the validity of the proportionate penalties clause challenge in *Johnson*, arguing that we indicated that the holding of *Patterson* was to be followed over that of *Clemons*.

¶ 20    The State additionally asserts that any question of coextensiveness is not ripe for resolution here, because defendant has not raised an eighth amendment challenge. The State maintains that, if we decide that *Johnson* did not resolve this issue, we should decline to resolve it in this case, as we similarly declined in *Horta* and *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 53 (citing *Horta* and stating that "we shall assume, without actually holding, that the proportionate-penalties claim is not automatically defeated by the failure of the eighth-amendment claim").

¶ 21    We agree with defendant that this case is not resolved by *Johnson*, because there we relied on the proportionate penalties clause being coextensive with the eighth amendment, which this court has subsequently recognized, in *Horta* and *LaPointe*, is an unsettled question. We disagree with the State that *Patterson* purported to overrule *Clemons*, as *Patterson* cited *Clemons* for the proposition that we are not bound by decisions from other jurisdictions. Moreover, citing *Horta*, the supreme court acknowledged in *People v. Coty*, 2020 IL 123972, ¶ 45, that it had not spoken consistently about the relationship between the proportionate penalties clause and the eighth amendment. The supreme court cited with approval *Horta*'s statement that, if a sentence passed muster under the proportionate penalties clause, then it would seem to satisfy eighth amendment standards. *Id.* Here, defendant has not raised an eighth amendment argument, so we address only his proportionate penalties argument.

¶ 22    Turning to the merits, defendant notes that the truth in sentencing statute requires a defendant convicted of first-degree murder to serve 100% of his prison sentence. 730 ILCS 5/3-6-3(a)(2)(i) (West 2020). Defendant argues that, in light of the stark differences between juveniles and adults, the statute is unconstitutional as applied, because it mandates that a juvenile homicide defendant tried as an adult serve 100% of his sentence without the possibility of parole, thereby depriving the court of the appropriate discretion to craft a sentence in accord with the constitutional goal of rehabilitation dictated by the proportionate penalties clause of article I, section 11.

¶ 23    Defendant cites *People v. Miller* (*Leon Miller*), 202 Ill. 2d 328 (2008), where the supreme court held that a mandatory sentence of natural life violated the proportionate penalties clause when applied to the juvenile defendant. It stated that the convergence of the Illinois transfer statute, the accountability statute, and the multiple murder sentencing statute eliminated the trial court's ability to consider any mitigating factors such as age or degree of participation. The court held that the mandated penalty distorted the case's factual realities and did not accurately represent the defendant's personal culpability, such that it shocked the moral sense of the community. Specifically, the defendant was 15 years old, had one minute to contemplate whether to participate in the incident, and stood as a lookout during the shooting but never handled a gun.

¶ 24    Defendant further argues that courts in other jurisdictions have struck down similar statutes, based on their state constitutional provisions, citing *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), *State v. Pearson*, 836 N.W.2d 88 (Iowa 2013), and *Diatchenko v. District Attorney*, 1 N.E.3d 270 (Mass. 2013). Defendant also cites scholarly articles that he states support his position.

¶ 25    Regarding his particular case, defendant points out that he was resentenced to 40 years' imprisonment, which was one day shy of a *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶ 41 ("We hereby conclude that a prison sentence of 40 years or less imposed on a juvenile offender

does not constitute a *de facto* life sentence in violation of the eighth amendment."). Defendant asserts that it is not the length of a particular sentence but, rather, the mandatory nature of the truth in sentencing act that is constitutionally impermissible as applied to him. Defendant argues that the truth in sentencing statute does not just statutorily mandate the delay of parole eligibility, as in the Iowa cases, but is more abhorrent in that it bars parole eligibility altogether for a juvenile homicide defendant. Defendant contends that the statute is therefore unconstitutional as applied under the proportionate penalties clause, which requires that the sentencing judge be afforded the freedom to craft a juvenile defendant's sentence in compliance with the state constitutional goal of rehabilitation.

¶ 26    The State points out that defendant challenges the truth in sentencing statute at times for a class of juvenile defendants and at other times as applied to himself. The State notes that a facial challenge requires a showing that the statute is unconstitutional under any set of facts, whereas an as-applied challenge is dependent on the particular facts and circumstances of the challenging party. *People v. Holman*, 2017 IL 120655, ¶¶ 29-30. The State cites *People v. Davis*, 2014 IL 115595, where the supreme court held that a statute mandating a life sentence without parole for the commission of multiple murders was not facially unconstitutional because it could be validly applied to adults even though a sentencing rule that is permissible for adults may not be permissible for children. The State argues that defendant is therefore limited to an as-applied challenge.

¶ 27    We agree with the State and its reliance on *Davis*. Further, in *People v. Washington*, 2021 IL App (4th) 200196, ¶¶ 52-53, the appellate court held that the truth in sentencing statute was not unconstitutional as applied to a defendant who was 19 years old at the time he committed a murder. Therefore, a facial challenge to the statute necessarily fails. See *People v. Harris*, 2018 IL 121932, ¶ 38 (a party raising a facial challenge to a statute must show that it is unconstitutional under any

possible facts). An as-applied challenge requires a showing that the statute is unconstitutional as applied to the party's particular facts and circumstances (*id.*), so defendant may challenge the statute only as applied to him and not a broad class of juvenile defendants.

¶ 28    The State argues that the record in this case does not support defendant's claim that the truth in sentencing statute was unconstitutionally applied to him under the proportionate penalties clause. The State highlights that defendant did not receive a *de facto* life sentence (see *Buffer*, 2019 IL 122327, ¶ 41) and argues that he received a "boon" in that he committed the instant offense only one week short of his 18th birthday, which legally qualified him as a juvenile offender rather than an adult offender. The State maintains that the legislature and the courts have set chronological milestones, which arguably had a negative consequence for defendant because he received a sentence just under a *de facto* life sentence but also benefited him because he qualified as a juvenile even though he was almost 18 years old.

¶ 29    The State asserts that *Leon Miller* is readily distinguishable from this case because defendant was almost 18 years old, as opposed to 15 years old; defendant was the principal in the crime and the jury found by special interrogatory that he personally discharged the weapon, as opposed to being an accomplice who was found guilty of murder through accountability; and this case does not involve a mandatory or even a *de facto* discretionary natural life sentence without parole. The State also notes that defendant had a resentencing hearing including the application of the *Miller* statutory factors and that the trial court was not constrained in sentencing, as it imposed a sentence well below the maximum available.

¶ 30    The State analogizes this case to *LaPointe*, 2018 IL App (2d) 160903, and *People v. Hoover*, 2019 IL App (2d) 170070. *LaPointe* involved a defendant who was 18 years old when he committed a murder. *LaPointe*, 2018 IL App (2d) 160903, ¶ 2. On appeal from the denial of leave

to file a successive postconviction petition, the defendant argued that his life sentence violated the proportionate penalties clause. *Id.* ¶ 48. We stated that the defendant's claim was not a true *Miller* claim but rather was a sentencing discretion or improper sentencing factor argument that had already been resolved. *Id.* ¶¶ 61, 63. The State argues that this is similarly true here.

¶ 31 In *Hoover*, the defendant received a life sentence for a murder that he committed when he was 22 years old. *Hoover*, 2019 IL App (2d) 170070, ¶ 1. The defendant sought leave to file a postconviction petition, arguing among other things that his sentence violated the proportionate penalties clause, citing *Miller*. *Id.* ¶ 19. This court disagreed, citing *LaPointe*. *Id.* ¶ 24. We stated that the defendant's claim that the trial court had failed to consider his youth in sentencing did not raise a claim of a constitutional deprivation but rather was an argument that the trial court had abused its sentencing discretion. *Id.* ¶ 38. We further held that the defendant's sentence did not shock the moral sense of the community and that it did not even rise to the level of an abuse of discretion. *Id.* ¶ 42.

¶ 32 The State argues that the trial court was not curtailed or limited by the statute. It notes that the trial court stated that it was going to exercise its discretion and decline to impose the 25-year sentencing enhancement. It sentenced defendant to 40 years in prison and then stated, "Truth in sentencing does apply in this case, so I am specifically finding that this case—this sentence is to be served at a hundred percent." The State maintains that, if the trial court had desired to reduce defendant's total sentence, it merely had to lower the sentence imposed.

¶ 33 In his reply brief, defendant argues, among other things, that *Hoover* and *LaPointe* are entirely distinguishable because those defendants were not juveniles when they committed their crimes.

¶ 34    We presume that statutes are constitutional, and the party challenging the statute's constitutionality has the burden of clearly establishing its invalidity. *Coty*, 2020 IL 123972, ¶ 22. "A court must construe a statute so as to uphold its constitutionality if reasonably possible." *Id.* We review *de novo* the question of whether a statute is constitutional. *Id.*

¶ 35    A statute violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Leon Miller*, 202 Ill. 2d at 338. Punishments satisfying this standard have not been delineated because, "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. A court reviews "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 36    As defendant recognizes, in *Buffer* our supreme court held that a prison sentence of 40 years or less for a juvenile offender gives him some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation as required under *Miller. Buffer*, 2019 IL 122327, ¶ 41. Here, because defendant received a 40-year sentence, it was not a *de facto* sentence of life imprisonment. After briefing in this case was complete, our supreme court issued its decision in *People v. Dorsey*, 2021 IL 123010, holding that day-for-day good conduct credit may be considered in determining whether a sentence of over 40 years is constitutional. It held that, because the defendant, who was 14 years old at the time of the crime, could receive day-for-day credit for his 76-year sentence, he had the opportunity for release after 38 years' imprisonment and therefore did not receive a *de facto* life sentence in violation of the eighth amendment. *Id.* ¶ 65. Our supreme court reiterated that the relevant sentencing scheme need provide the juvenile only "some meaningful opportunity to obtain release based on demonstrated maturity and

rehabilitation" before spending more than 40 years in prison. *Id.* Here, because defendant received a sentence of 40 years, he still has a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."

¶ 37    We recognize that *Buffer* and *Dorsey* address eighth amendment arguments whereas defendant is raising a proportionate penalties challenge, but the arguments in those cases and defendant's argument stem from *Miller*'s holding that juveniles "have a diminished culpability and greater prospects for reform." *Miller*, 567 U.S. at 471.

¶ 38    Considering the proportionate penalties clause directly, we find that defendant's sentence did not violate the clause due to the truth in sentencing statute as applied to him. Again, the proportionate penalties clause states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 39    We agree with the State that this situation is readily distinguishable from *Leon Miller*. Most significantly, Leon Miller received a mandatory life sentence. Additionally, though defendant was a juvenile at the time he committed the offense, he was almost 18 years old as opposed to 15 years old. Leon Miller participated in the crime last-minute, acted as a lookout, and never handled a gun. *Leon Miller*, 202 Ill. 2d at 341. In contrast, defendant and his friends planned to commit a crime by not paying the cab fare. Defendant brought a loaded gun with him and, without provocation, shot the cab driver. Defendant did not stop after a single shot but, rather, fired multiple rounds that hit and killed the driver. Defendant further had a criminal history and committed additional crimes while out on bond.

¶ 40    Defendant's citations to out-of-state cases are not persuasive, as the State points out in its brief, because "[t]his court's jurisprudence of Illinois constitutional law cannot be predicated on

the actions of our sister states." *Clemons*, 2012 IL 107821, ¶ 32. The constitutional provisions being interpreted are also different, in that *Lyle*, 854 N.W.2d 378, and *Pearson*, 836 N.W.2d 88, involved Iowa's constitutional provision stating that "[e]xcessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted." Iowa Const. art. I, § 17. *Diatchenko*, 1 N.E.3d at 275 n.3, involved a similar provision of the Massachusetts Declaration of Rights, and the defendant there received a mandatory sentence of life imprisonment without the possibility of parole.

¶ 41 Importantly, here the trial court had ample opportunity to and did exercise its discretion in sentencing defendant. The sentencing range for first-degree murder was 20 to 60 years. 730 ILCS 5/5-4.5-20 (West 2002). The trial court chose not to impose the 25-year firearm sentencing enhancement. It sentenced defendant to 40 years' imprisonment, which was 20 years below the maximum base sentence and 45 years below the maximum range with the enhancement. The truth in sentencing statute did not constrain the trial court, for had it determined that defendant should have a lower total sentence, it could have simply imposed a lower term of imprisonment. The proportionate penalties clause requires us to consider both the "seriousness of the offense" and "the objective of restoring the offender to useful citizenship" (Ill. Const. 1970, art. I, § 11), and "there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). Considering that defendant chose to senselessly fire several shots at and kill a cab driver who was giving him a ride at a time when defendant was almost 18 years old, his 40-year sentence is not so cruel, degrading, or wholly disproportionate to the offense as to shock the moral sense of the community. Therefore, we conclude that the truth in sentencing statute does not violate the clause as applied to defendant. See also *Pacheco*, 2013 IL

App (4th) 110409, ¶ 60 (briefly stating that the truth in sentencing statute was not unconstitutional as applied to a juvenile offender, "[f]or the same reasons [the court did] not find the automatic exclusion statute or the imposition of the sentencing ranges applicable to adults violates either the eighth amendment or the proportionate penalties clause").

¶ 42                                    B. Length of Sentence

¶ 43    Defendant next argues that the trial court abused its discretion in sentencing him to 40 years' imprisonment in light of extensive mitigating evidence presented including his expression of remorse and his rehabilitative potential.

¶ 44    Defendant asserts that, in discussing the mitigating factors in section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2020)), the trial court stated that none applied, without considering that the eighth factor did apply. Subsection (8) states that "[t]he defendant's criminal conduct was the result of circumstances unlikely to recur." *Id*. § 5-5-3.1(a)(8). Defendant argues that this is true because, at the time of the offense, he was 17 years old, was under the influence of drugs, and his actions were committed in the spur of the moment. Defendant points to the statement in his mitigation report that, after his friends jumped out of the taxi, he could not get out and made an impulsive and lethal decision. Defendant argues that research shows that juveniles are less able to anticipate the consequences of their conduct and, if he had been able to do so, he would have made different choices. Defendant argues that, given his current state of maturity, as evidenced by his virtually conflict-free behavior in prison, and that he has not been under the influence of drugs in the lengthy interim, there is little to no possibility that the same set of circumstances would occur in the future, so the trial court should have credited him for this factor.

¶ 45    Defendant also cites the sentencing factors for juveniles. Section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2020)) requires the trial court to consider the following additional factors in mitigation if the defendant was under 18 years of age at the time of the offense:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor."

Defendant argues that the trial court gave him credit for factors (1), (3), and (4), during the resentencing hearing, but failed to properly credit him for factors (2), (6), (8), and (9).

¶ 46    For factor (2), relating to outside pressure, the trial court stated that it did not see anything with respect to that factor and therefore would not credit defendant for that factor. Defendant argues, however, that the evidence submitted makes clear that he was subjected to negative influence from his cousins, especially his older male cousin, Willie, who introduced him to drugs, alcohol, gangs, and guns. Defendant contends that if it were not for the negative, familial peer pressure of Willie, it is highly unlikely that he would ever have had a gun on the day that he shot the cab driver.

¶ 47    Regarding factor (6), the defendant's degree of participation and specific role in the offense, defendant argues that, although there is no dispute that he committed the offense, there was no evidence that it was planned beforehand. He maintains that the facts demonstrate that this was nothing more than an incident of taxi ditching gone terribly wrong based on his lack of maturity leading to careless, impulsive, and reckless behavior.

¶ 48    For factor (8), the defendant's prior juvenile or criminal history, defendant argues that, although the trial court stated that he had such a history, the presentence investigation report makes clear that he had never been adjudicated a delinquent. Defendant further asserts that he had a very minimal adult criminal history, with just one prior felony for residential burglary and misdemeanors for nonviolent and traffic matters. Defendant argues that this factor should therefore be mitigating rather than aggravating.

¶ 49    Last, for factor (9), which involves consideration of any other relevant information, including an expression of remorse, defendant argues that the trial court credited him for being very remorseful at the time of the hearing and probably for some time before that. The trial court then stated, however, that defendant was not remorseful at the time of the offense, during his time out on bond, and when he heard the guilty verdict. Defendant argues that this behavior may have

reflected his immaturity at the time of the offense and at the conclusion of trial but that the proper focus should have been on his remorse at the time of his resentencing, which even the prosecutor described as "touching and sincere."

¶ 50    Defendant argues that, in similar circumstances, Illinois courts have found that a sentence of 30 years' imprisonment was excessive for a juvenile homicide defendant. See *People v. Smith*, 178 Ill. App. 3d 976, 985 (1989); *People v. Steffens*, 131 Ill. App. 3d 141, 152-53 (1985).

¶ 51    A trial court has wide latitude in sentencing a defendant, as long as it does not ignore relevant mitigating factors or consider improper aggravating factors. *People v. McGee*, 2020 IL App (2d) 180998, ¶ 8. The weight to be given to these factors depends on the circumstances of each case. *People v. Ferguson*, 2020 IL App (3d) 200041, ¶ 12. A reviewing court gives substantial deference to the trial court's sentencing decision because the trial court has observed the defendant and the proceedings and is therefore in a much better position to consider the sentencing factors. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 9. We therefore accord great deference to a sentence within the appropriate sentencing range. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 66. We will not disturb the trial court's sentencing decision absent an abuse of discretion, which occurs only where the sentence is greatly at variance with the law's spirit and purpose or manifestly disproportionate to the nature of the offense. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 9. We may not substitute our judgment for that of the trial court just because we would have weighed sentencing factors differently. *Colon*, 2018 IL App (1st) 160120, ¶ 66.

¶ 52    We disagree with defendant that the trial court improperly failed to give him credit for section 5-5-3.1's eighth mitigating factor, that the criminal conduct was the result of circumstances unlikely to recur. Defendant describes his actions as occurring in the spur of the moment, but defendant chose to bring a loaded gun with him in the taxi. Further, Darnell Wade testified at trial

that he put his revolver in a dresser drawer in the home where he was hanging out with defendant and others but that it was not there when the group went to leave in the taxi. He asked who took it but was told to "be cool," because he was drunk. The implication is that defendant took Wade's gun, starting the series of events leading to the driver's death. That defendant had not been under the influence of drugs for many years is to be expected given that he has been incarcerated.

¶ 53    We also see no error in the trial court's consideration of the juvenile sentencing factors. For the question of outside pressure, Willie was not present on the day of the incident, he did not provide defendant with the gun, and the shooting was not gang-related. For the sixth factor regarding the defendant's degree of participation and specific role in the offense, including the level of planning, this would not be considered a factor in mitigation. Again, defendant chose to bring a loaded gun in the cab and chose to fire multiple shots at the driver. As for prior juvenile or criminal history, the presentence investigation report shows that defendant was on probation for the felony of residential burglary when he committed the murder, and it also lists a 2002 offense of theft. Defendant was additionally charged with numerous crimes while out on bond. Although many of the charges were traffic offenses, he was also charged with domestic battery and driving under the influence of alcohol, and he was convicted of possession of a controlled substance. Last, regarding his expression of remorse, it was not error for the trial court to consider both defendant's lack of remorse at the time of trial and his current remorse, as the factor pertains to "any other information the court finds relevant and reliable." 730 ILCS 5/5-4.5-105(a)(9) (West 2020).[1]

---

[1] In *Holman*, 2017 IL 120655, ¶ 47, our supreme court stated, "For juvenile defendants like the defendant in this case, who were sentenced before the statutory amendment, any inquiry into the *Miller* factors is backwards-looking," which could imply that conduct subsequent to the

¶ 54    *Smith* is distinguishable from this case because that defendant lacked a prior criminal record and had an intellectual disability, and the trial court wrongly stated that the offense was gang-related. *Smith*, 178 Ill. App. 3d at 985. In *Steffans*, the defendant and the victim had a prior confrontation, and the defendant later struck the victim with his car after the victim approached the car and the defendant started to drive away. The victim was caught underneath the car, and the defendant did not stop the car for more than one block. *Steffans*, 131 Ill. App. 3d at 143. Here, in contrast, there was no prior confrontation and no heightened conflict surrounding the murder that defendant committed.

¶ 55    In the end, we find no basis to disturb the trial court's sentence of 40 years' imprisonment. Although a juvenile, defendant was on felony probation at the time he committed the instant offense. Again, he alone senselessly shot a cab driver multiple times. To whatever extent defendant displayed rehabilitative potential, a defendant's rehabilitative potential is not entitled to more weight than the seriousness of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). Moreover, the trial court accounted for defendant's youth and the mitigating factors by not sentencing him to the maximum of 60 years' imprisonment and by not imposing the 25-year sentencing enhancement. The record from the sentencing hearing and the hearing on defendant's

---

original sentencing hearing is irrelevant. However, *Holman* is distinguishable because in that case the supreme court was determining whether the trial court had considered certain factors in the original sentencing. As this case involves a resentencing hearing, the trial court could properly consider defendant's subsequent remorse. See *People v. Zumot*, 2021 IL App (1st) 191743, ¶¶ 32-34.

motion to reconsider the sentence shows that the trial court carefully considered all potential mitigating and aggravating factors, and we conclude that it did not abuse its discretion.

¶ 56                                III. CONCLUSION

¶ 57     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 58     Affirmed.

---

**No. 2-20-0416**

---

| | |
|---|---|
| **Cite as:** | *People v. Hill*, 2022 IL App (2d) 200416 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 03-CF-1598; the Hon. David Paul Kliment, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Steven W. Becker, of Law Office of Steven W. Becker LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---