2025 IL App (1st) 232099-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
July 28, 2025

No. 1-23-2099

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 00 CR 5388-02 |
| | ) | |
| MICHAEL STONE, | ) | The Honorable |
| | ) | John F. Lyke, Jr., |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The appellate court affirms the trial court's denial of a petition for leave to file a successive postconviction petition seeking to raise a proportionate penalties challenge to a 30-year sentence for first degree murder committed when petitioner was 17 years old.

¶ 2    Petitioner Michael Stone was convicted in a jury trial of first degree murder arising out of the fatal shooting of Friday Gardner on September 12, 1999. Petitioner was 17 years old at the time of the offense, and the trial court sentenced him to 30 years imprisonment on the conviction. In this appeal, petitioner challenges the trial court's denial of his petition for leave to file a successive postconviction petition seeking to raise an as-applied challenge to his sentence under the

proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), based on the facts of his case and arguments that attitudes toward the sentencing of juveniles have evolved since the time of his sentencing. The trial court found that petitioner had failed to show cause for failing to raise this claim in earlier postconviction proceedings. We affirm.

¶ 3                                    BACKGROUND

¶ 4        This court has set forth the evidence from petitioner's trial in our two prior decisions in this case. Petitioner was tried in a simultaneous but severed jury trial with his brother, Michael Carter. A third codefendant, Cortez Jones, was tried separately. All three were convicted of first degree murder and received sentences of 30 years imprisonment.

¶ 5        In summary, the evidence presented at petitioner's trial demonstrated that on the afternoon of September 12, 1999, the victim, Friday Gardner, was at his cousin's apartment when the next-door neighbor came over and reported that two armed men had just broken into his apartment and burglarized it, taking marijuana, money, and jewelry. Petitioner was also a resident of the apartment where the break-in had occurred, but he was not home at the time. Carter was not a resident of the apartment, but he and Jones came to believe that the victim had some form of involvement in the burglary after he was seen attempting to sell bags of marijuana later that day. That evening, an argument occurred involving the victim, Carter, Jones, and petitioner, pertaining to the victim's role in the apartment burglary along with an accusation by the victim that the other three had stolen a radio from the victim's van in retaliation. During this argument, the victim was shot and killed.

¶ 6        The defense did not dispute at trial that petitioner had fired a gun at the victim during that argument. Rather, the defense's position was that petitioner had acted in self-defense. Two

eyewitnesses, Lenisha Pearson and Latonya Cheeks, testified that during the argument petitioner had come out of a nearby alley and fired multiple shots at the victim.

¶ 7        The various witnesses gave conflicting testimony about whether the victim also had a gun in his hands at the time he was shot. Pearson testified that the victim was not holding a gun at the time. Cheeks, Felicia Anderson, and Michelle Anderson, all of whom are cousins of petitioner and Carter, testified that the victim did have a gun at the time and that it was removed from his hands after the shooting by his friend Tommy Gaston. However, Cheeks and Felicia Anderson were impeached with their handwritten statements and grand jury testimony, in which neither had mentioned seeing the victim holding a gun at the time of the shooting. Antonio Phillips, who was a cousin of the victim, testified that the victim did not have a gun at the time. Tommy Gaston testified that he was standing with the victim at the time of the shooting and did not see him with a weapon. Gaston also denied that he had taken a gun out of the victim's hands after the shooting.

¶ 8        Petitioner testified in his own defense that earlier on the day of the shooting, after the home invasion had occurred at his apartment, he had purchased a .380 caliber gun from a drug user in exchange for three bags of drugs. Petitioner testified he did this for protection following the break-in. At around 10 p.m., he saw Carter, Jones, and the victim having an argument in the street. Petitioner then retrieved the gun that he had purchased, put it in his pocket, and went down to the alley. He testified that the argument became heated, at which point he observed the victim draw a gun from behind his back and point it forward. At that point, petitioner shot the victim three times. Petitioner stated that he thought the victim was going to shoot either Carter, Jones, or himself. He testified that he did not go to the police immediately because he was scared but turned himself in after Carter was arrested.

¶ 9    The jury was instructed on self-defense and second degree murder. The jury returned a verdict finding petitioner guilty of first degree murder.

¶ 10   Petitioner was sentenced on December 20, 2002, in a joint sentencing hearing with Carter and Jones. A presentence investigation (PSI) report was prepared. It reflected that petitioner had been raised by his paternal grandmother, that he had limited contact with his father, and that he had not seen his mother in eight years. He was never married and had no children. He had completed a portion of his tenth-grade year of high school by the time he became incarcerated and was enrolled in an educational program to obtain his GED. He denied any psychological health history, alcohol or substance abuse issues, or gang affiliation.

¶ 11   The State presented a victim impact statement from the victim's sister. In argument, petitioner's counsel referenced statements that had just been made by Jones' counsel, which was that the shooting was a compulsive act and that there was no indication it was premeditated. Counsel presented no additional evidence in mitigation but argued that petitioner was in his second year of high school at the time, had fathered no children, and had no criminal record other than this incident. Petitioner declined to make a statement at the sentencing hearing.

¶ 12   The court began by noting that the eligible sentencing range for first degree murder was 20 to 60 years in the Illinois Department of Corrections. The court then went on to state:

> "At this time, the Court considering the nature and circumstances and seriousness of the offense, the facts and evidence heard *** at trial and at this hearing, matters set forth in the presentence investigative report as to each defendant, the arguments of counsel, and specifically considering the statutory factors in aggravation, mitigation[,] including but not limited to the history, age, and character of each defendant, of the defendants' rehabilitative potential, and the need to deter each of these defendants and others from this type of criminal

misconduct in the future, the Court at this time will impose a sentence, which is fair and appropriate. In doing so, in viewing again the facts of the case that were heard, this is yet again another example of senselessness of the violence that is on the streets in the cities, towns of our country, why young men in particular feel compelled to act in such a way that not only deprives [the] victim of his life and his family of his life, but also so shortsighted and senseless because it basically is taking your lives in a significant way and has impacted on each of your families. So, it's a lose, lose situation."

The court thereafter imposed a sentence of 30 years on petitioner. The court also imposed the same sentence on Carter and Jones.

¶ 13 Petitioner filed a direct appeal, which was consolidated with the direct appeal of Carter. Their consolidated appeals raised a number of challenges to the trial evidence and to the prosecutor's statements in closing arguments. They also argued that the trial court abused its discretion in sentencing each of them to 30 years in prison. Both of them argued that their sentences were excessive and failed to give adequate consideration to their lack of criminal backgrounds, their education and work histories, and their potential for rehabilitation. This court found from its review of the record that the trial court had properly considered the relevant statutory factors in sentencing petitioner and Carter. We reiterated that the trial court had considered the nature and circumstances of the offense, the matter set forth in the PSIs, the rehabilitative potential of both of them, and the need to deter such criminal misconduct in the future. We also noted that the sentences were on the shorter end of the sentencing range for first degree murder and concluded that the trial court had not abused its discretion in imposing sentences of that length. See *People v. Stone*, 351 Ill. App. 3d 1170 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23) (*Stone I*). The supreme court thereafter denied a petition for leave to appeal.

¶ 14    In 2005, petitioner filed an initial petition for postconviction relief. In it, petitioner raised a claim of ineffective assistance of trial counsel for failing to call a witness who purportedly would have testified to the violent character of the victim in support of petitioner's theory that he acted in self-defense. The trial court summarily dismissed the petition as being frivolous and patently without merit. This court affirmed summary dismissal. See *People v. Stone*, 377 Ill. App. 3d 1144 (2007) (table) (unpublished order under Illinois Supreme Court Rule 23). The supreme court thereafter denied a petition for leave to appeal.

¶ 15    On August 9, 2023, petitioner filed the petition for leave to file a successive postconviction petition that is the subject of this appeal. The basis of the proposed petition was a claim that his 30-year sentence, imposed for an offense that occurred when he was 17 years old, violated the proportionate penalties clause of the Illinois Constitution. See Ill. Const. 1970, art. I, § 11. The petition primarily cited the seminal juvenile-sentencing case of *Miller v. Alabama*, 567 U.S. 460 (2012), and various cases that followed it. Petitioner also attached his own affidavit, in which he detailed the history of family instability, homelessness, and trauma that he had experienced in his 17 years leading up to the day of the shooting. He provided his version of the events of that day, explaining that he took responsibility for what happened but believed that he had seen the victim pulling out a gun and had shot in the fear that he needed to protect his brother and himself. He explained in detail the various therapies and educational efforts he has pursued during his incarceration in an attempt to better himself.

¶ 16    Four additional affidavits—from petitioner's mother, his step-mother, his older brother Darvel Stone, and his cousin Katrina Anderson—were also attached to the proposed petition. Each family member's affidavit essentially corroborated petitioner's statements about how difficult his childhood was, attested to the fact that he was a changed person, and promised that he would have

a strong family support system when he is released from incarceration. Finally, it attached portions of one law review article and two psychology journal articles. These articles pertained to the topic that societal views toward juvenile sentencing were evolving for the harshest of crimes, due to the increasing recognition that juvenile offenders are less criminally culpable and have greater prospects for rehabilitation than offenders who commit crimes as adults.

¶ 17     On October 3, 2023, the trial court denied petitioner leave to file his proposed successive postconviction petition. Applying the cause-and-prejudice test for determining whether leave should be granted to file a successive postconviction petition, the trial court ruled that petitioner had failed to show "cause" for his failure to raise this claim in his initial postconviction petition. See 725 ILCS 5/122-1(f) (West 2022). The trial court reasoned that petitioner could have raised a challenge to his sentence under the proportionate penalties clause either on direct appeal or in his initial petition. Citing *People v. Dorsey*, 2021 IL 123010, ¶ 74, the trial court reasoned that, while recent developments in the law of juvenile sentencing provided helpful support for petitioner's claim, these developments did not provide "cause" for failing to raise a proportionate penalties challenge in earlier proceedings. This appeal followed.

¶ 18                                         ANALYSIS

¶ 19     On appeal, petitioner argues that the trial court erred in denying him leave to file his successive postconviction petition. Petitioner argues that he has satisfied both prongs of the cause-and-prejudice test to obtain leave to file a successive petition.

¶ 20     The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) is the statutory procedure by which an imprisoned individual can raise a claim that his or her conviction or sentence was based on a substantial denial of a constitutional right. *People v. Clark*, 2023 IL 127273, ¶ 38. It is not an appeal of the underlying judgment, but rather it is a collateral attack on

that judgment. *People v. House*, 2021 IL 125124, ¶ 15. Its purpose " 'is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal.' " *Id.* (quoting *People v. Barrow*, 195 Ill. 2d 506, 519 (2001)). For that reason, the doctrine of *res judicata* applies to bar consideration of issues that were raised and decided on direct appeal, and forfeiture precludes consideration of issues that could have been raised but were not. *Dorsey*, 2021 IL 123010, ¶ 31.

¶ 21    In this case, petitioner has already filed an initial postconviction petition, in which he did not raise a proportionate penalties challenge to his sentence. Section 122-3 of the Post-Conviction Hearing Act (725 ILCS 5/122-3 (West 2022)) provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."

¶ 22    A petitioner is limited to filing one postconviction petition unless he or she obtains leave of court to file a successive petition. *Id.* § 122-1(f). Leave of court to file a successive petition may be granted only if a petitioner demonstrates "cause" for the failure to bring the claim in the initial postconviction proceeding and "prejudice" resulting from that failure. *Id.* A petitioner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial postconviction proceedings. *Id.* § 122-1(f)(1). A petitioner shows prejudice by demonstrating that the claim not raised during his or her initial postconviction proceeding so infected the trial that the resulting conviction or sentence violated due process. *Id.* § 122-1(f)(2). Leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 23      Both prongs of the cause-and-prejudice test must be satisfied for a petitioner to overcome principles of *res judicata* and the waiver provision of section 122-3. *Clark*, 2023 IL 127273, ¶ 47. Courts make cause and prejudice determinations on the pleadings by preliminarily screening them to determine whether the motion adequately alleges facts making a *prima facie* showing of cause and prejudice. *Id.* The allowing of leave to file successive postconviction petitions is disfavored. *People v. Bailey*, 2017 IL 121450, ¶ 39. This court undertakes *de novo* review of the denial of a petition for leave to file a successive postconviction petition. *Id.* ¶ 13. We may affirm on any basis finding support in the record. *People v. Horton*, 2021 IL App (1st) 180551, ¶ 42.

¶ 24      Petitioner seeks in his proposed successive postconviction petition to pursue an as-applied claim under the proportionate penalties clause of the Illinois Constitution. In pertinent part, that constitutional provision states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Relevant here, a criminal sentence violates this provision when it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). No further definition is given of the kind of criminal sentence that qualifies as such, because courts recognize that standards of decency and fairness that shape the community's moral sense can "evolve" over time. *Id.* at 339. To determine whether a criminal penalty shocks the moral sense of the community, we consider the objective evidence of the case as well as the community's changing standard of moral decency. *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008). A sentence does not offend the constitutional requirement of proportionality if it is commensurate with the seriousness of the crime and gives adequate consideration to the rehabilitative potential of the defendant. *People v. St. Pierre*, 146 Ill. 2d 494, 513 (1992).

¶ 25    In this case, petitioner's contention is that he made a sufficient showing of cause and prejudice for a claim that his 30-year sentence for first degree murder "shocks the moral sense of the community." As for cause, he makes an argument with which this court is very familiar. He argues that in recent decades, advancements have been made in the scientific understanding of juvenile brain development and psychology, and these have led to evolving moral attitudes toward the sentencing of individuals who commit crimes as juveniles. In turn, these evolving moral attitudes have led to changes in the law concerning juvenile sentencing. The most prominent legal development is the case of *Miller*, which held that statutory sentencing schemes mandating life without parole for a juvenile offender violate the eighth amendment, which requires that a court sentencing a juvenile have the ability to consider certain youth-related factors that diminish culpability and increase prospects of rehabilitation. *Miller*, 567 U.S. at 479. Additional legal developments have stemmed from the principles of *Miller*, including several Illinois legislative enactments pertaining to juvenile offenders. The one upon which petitioner primarily relies in this case is the statute first enacted in 2016 that all offenders who commit crimes as juveniles now receive sentencing hearings at which the trial court must make on-the-record considerations as to various youth-related mitigating factors first set forth in *Miller*. See 730 ILCS 5/5-4.5-105(a), (b) (West 2024); see also *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 38 (describing recent legislative changes in juvenile sentencing as evidence of evolving moral attitudes toward the sentencing of juvenile offenders). Petitioner's cause argument emphasizes that the developments in juvenile brain science and psychology were unavailable at the time of his sentencing, direct appeal, and initial postconviction petition, and he is seeking to rely on these scientific developments in his successive petition.

¶ 26       As for prejudice resulting from his inability to raise this claim in earlier proceedings, petitioner contends that he "received a sentence that did not reflect his personal circumstances, diminished culpability, and increased rehabilitative potential based on his youth." He points out that he had no criminal history and that the affidavits attached to his proposed petition demonstrate his exceptional rehabilitative potential. These affidavits, which are by petitioner and four family members, explain how he was raised in his early years by a single mother. The family dealt with periods of homelessness and going without food. Eventually the Department of Children and Family Services became involved, and petitioner went to live with his grandmother. His mother then became addicted to drugs and was no longer a part of his life. At his grandmother's house, petitioner was one of 15 kids and 30 people total in the household. He was surrounded there by verbal abuse, physical violence, alcohol and substance abuse, and gang involvement by the various residents. He explained that he would sometimes sleep on trains to avoid being a burden to others. As of the time of the shooting, petitioner had recently moved into the apartment of his cousin, when the apartment was invaded, the residents robbed at gunpoint, and one was beaten with a baseball bat. Petitioner stated that he then acquired a gun, which he later used only in the belief that he needed to act in defense of himself or his brother when he saw the victim pull a gun.

¶ 27       Petitioner goes on to argue that he has demonstrated "exceptional rehabilitation" since that time, including earning a GED, an associate's degree, and various other educational certificates which are included with his petition. He has also undergone various therapies during his time in prison. Petitioner argues that no evidence in mitigation was presented in his 2002 sentencing hearing and that the law treated him as an adult for criminal justice purposes at the time. He argues that he received only a "cursory" sentencing hearing with his two codefendants, pointing out that his counsel had filed a motion to reconsider sentence before the sentence had even been imposed.

Petitioner argues that he seeks now to present the above new evidence to support an as-applied claim that his 30-year sentence violates the proportionate penalties clause.

¶ 28    Under the present state of case law from our supreme court, it is not clear that an argument along the lines of the one raised by petitioner can ever show "cause" for a petitioner's failure to raise a proportionate penalties argument in an initial postconviction petition. See *Dorsey*, 2021 IL 123010, ¶ 74 (stating in a case involving 14-year-old offender challenging an aggregate 76-year sentence that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' "); see also *Clark*, 2023 IL 127273, ¶ 93 ("*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. Instead, defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions." (Internal punctuation omitted)); *People v. Moore*, 2023 IL 126461, ¶¶ 40-42 (same); *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 44-63 (discussing these cases).

¶ 29    In this case, however, we need not consider whether petitioner could establish cause for failing to raise a proportionate penalties claim in his initial petition. Even if he were able to do so, it is clear that he is unable to establish prejudice from the inability to raise such a claim. As stated above, our supreme court has held that leave of court to file a successive postconviction petition should be denied when it is clear from a review of the proposed petition and supporting documentation that the claims alleged in it fail as a matter of law or where the petition and documentation are insufficient to justify further proceedings. *Smith*, 2014 IL 115946, ¶ 35; accord *Clark*, 2023 IL 127273, ¶ 70. Here, we conclude from our review of the proposed successive

petition and its supporting documentation that any claim that petitioner's 30-year sentence for first degree murder is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community" fails as a matter of law.

¶ 30    First, this court has already upheld petitioner's 30-year sentence under the lower common-law standard of whether the trial court abused its discretion and imposed an excessive sentence. *Stone I*, slip order at 23-24. In doing so, we rejected petitioner's contention, echoed now in his current proportionate penalties claim, that his 30-year sentence did not reflect proper consideration of his potential for rehabilitation. *Id.* at 23. We noted that the sentencing range set by the legislature for first degree murder was between 20 and 60 years and remarked that petitioner had been given a sentence "on the shorter end" of this range. *Id.* (citing 730 ILCS 5/5-8-1(a)(1)(a) (West 2000)). We add also that it is 10 years shorter than a sentence of 40 years, which is the duration that our supreme court has since held provides a juvenile offender with a meaningful opportunity to obtain release based upon maturity and rehabilitation. See *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 31    Petitioner has not drawn our attention to any case in which a sentence in the approximate range of 30 years for first degree murder has been held to shock the moral sense of the community, even when imposed on a juvenile offender. Instead, similar arguments have been consistently rejected within the past few years in cases involving juvenile and young-adult offenders with troubled backgrounds and adverse influences who received sentences for first degree murder that are longer than petitioner's 30 years.

¶ 32    In *People v. Rodriguez*, 2018 IL App (1st) 141379-B, ¶ 86, this court held that a 50-year sentence imposed on a 15-year-old offender convicted of first degree murder did not violate the proportionate penalties clause, as-applied to him. The offender in that case had fired gunshots into a convenience store to kill another teenager, and this court rejected an argument, similar to the one

petitioner makes here, that a difficult upbringing and the negative influences of brothers who were gang members diminished his culpability and rendered his sentence unconstitutional. *Id.* ¶¶ 82, 86.

¶ 33    In *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 70, this court held that a 40-year sentence imposed on a 16-year-old offender convicted of first degree murder for firing shots in a gang-related shooting did not shock the moral sense of the community. As here, the defendant in that case stressed his difficult upbringing and lack of criminal history in arguing that his youth and rehabilitative potential had not been given adequate consideration. *Id.* ¶ 69.

¶ 34    In *People v. Hill*, 2022 IL App (2d) 200416, ¶ 41, the court rejected a proportionate penalties challenge to a 40-year sentence imposed on a 17-year-old offender convicted of first degree murder after he fired gunshots inside a cab in an attempt to avoid paying a fare, killing the cab driver. The court cited the rule that " 'there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty.' " *Id.* (quoting *People v. Taylor*, 102 Ill. 2d 201, 206 (1984)).

¶ 35    In *People v. Walsh*, 2022 IL App (1st) 210786, ¶¶ 38-41, this court affirmed the denial of leave to file a successive postconviction petition in part on the basis that a 35-year sentence imposed on an 18-year-old offender convicted of first degree murder did not shock the moral sense of the community. While the offender in that case was convicted on a theory of accountability, the evidence showed he had coerced a 14-year-old to commit a gang-related shooting on his behalf.

¶ 36    In *People v. Streeter*, 2024 IL App (1st) 191825-UB, ¶ 87, and *People v. Bracey*, 2024 IL App (1st) 231356-U, ¶ 18, this court found arguments similar to those petitioner makes here to be frivolous or patently without merit in the context of affirming first-stage summary dismissal of initial postconviction petitions. See 725 ILCS 5/122-2.1(a)(2) (West 2022). In *Streeter*, an 18-year-old offender convicted of first degree murder on a theory of accountability was challenging

the constitutionality of a 40-year sentence. This court stated that it "cannot find that defendant's sentence even arguably 'shock[s] the moral sense of the community.' " *Streeter*, 2024 IL App (1st) 191825-UB, ¶ 87 (quoting *Leon Miller*, 202 Ill. 2d at 338). Citing *Streeter*, this court made an essentially identical statement as in *Bracey*, 2024 IL App (1st) 231356-U, ¶ 18, in affirming summary dismissal of a petition challenging a 35-year sentence imposed on a 17-year-old offender who pled guilty to first-degree murder on a theory of accountability, to run consecutively with a 4-year sentence for residential burglary. We point out that the "frivolous or patently without merit" standard that the courts were applying in *Streeter* and *Bracy* is a lower and less demanding legal standard than the cause-and-prejudice test which petitioner must satisfy here to obtain leave to file a successive postconviction petition. See *Smith*, 2014 IL 115946, ¶ 35.

¶ 37    Petitioner's 30-year sentence in this case is shorter than those involved in any of the above cases in which the sentences for first degree murder were held not to shock the moral sense of the community. Moreover, petitioner was an active participant in the shooting in this case. He acknowledged at trial that he fired three gunshots at the victim, using a gun that he had purchased earlier that day from a drug user in exchange for several bags of drugs. Although petitioner testified that he bought the gun for protection following the break-in at his apartment, the evidence also showed that Carter and Jones believed that the victim had some involvement in the break-in and was selling the marijuana that had been stolen from there. Further, although petitioner maintains that he saw the victim raise a weapon and that he acted only in defense of his brother and himself, the jury found him guilty of first degree murder after receiving instructions on self-defense and second degree murder. The trial evidence also showed that multiple other people were standing nearby when petitioner fired shots at the victim.

¶ 38    This was a serious offense. And sadly, the facts presented in petitioner's affidavit about his troubled home life and negative influences of violence, substance abuse, and gangs are little different than the backgrounds of many young offenders who come before our courts. We continue to believe, as we held on direct appeal, that petitioner received an appropriate sentence that adequately took into consideration his potential for rehabilitation as a juvenile offender. Regardless of any changes that have occurred in society's moral attitudes toward juvenile sentencing in the intervening two decades, it is simply not arguable that petitioner's 30-year sentence for first degree murder qualifies as "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." See *Leon Miller*, 202 Ill. 2d at 338. His challenge under the proportionate penalties clause therefore fails as a matter of law, and we therefore affirm the trial court's denial of his petition for leave to file a successive postconviction petition raising this claim.

¶ 39                                    CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 41    Affirmed.