# Illinois Official Reports

## Appellate Court

---

## *People v. Washington*, 2021 IL App (4th) 200196

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TORY RASHAD WASHINGTON, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-20-0196 |
| Filed<br>Rehearing denied | October 22, 2021<br>December 15, 2021 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-CF-793; the Hon. J. Casey Costigan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Natalia Galica, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Linda Susan McClain, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                            JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices DeArmond and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In July 2014, the State charged defendant, Tory Rashad Washington, with two counts of murder pursuant to section 9-1(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/9-1(a)(1) (West 2012)) and two counts of murder pursuant to section 9-1(a)(2) of the Criminal Code (*id.* § 9-1(a)(2)). The charges alleged that in June 2014, defendant beat a man named Ronald Smith to death. Defendant was 19 years old at the time of the murder.

¶ 2        In September 2015, defendant pleaded guilty pursuant to a plea agreement with the State. The State agreed that if defendant testified against his codefendants and pleaded guilty to count II (*id.*), the State would (1) dismiss the remaining three counts, (2) recommend a sentencing cap of 35 years in prison instead of the 60 years authorized by statute, and (3) not pursue an enhanced prison term of natural life based upon a finding that the murder was committed in a brutal and heinous manner indicative of wanton cruelty.

¶ 3        In April 2016, the trial court conducted defendant's sentencing hearing and sentenced him to 32 years in prison. Defendant filed a motion to withdraw his guilty plea and a motion to reconsider his sentence. At a subsequent hearing, however, defendant moved to withdraw both motions. The court explained to defendant that withdrawing the motions would preclude him from appealing the case, but he persisted in his wish to withdraw the motions. Defendant did not file a direct appeal.

¶ 4        In December 2019, defendant filed *pro se* a petition pursuant to the Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) in which he argued that (1) the truth-in-sentencing statute—section 3-6-3(a)(2)(i) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(2)(i) (West 2014))—was unconstitutional as applied to persons under the age of 21 at the time of the commission of the offense, including defendant, (2) his guilty plea was involuntary because "he would not have pled guilty if he had understood the implications of the eighth amendment," and (3) the trial court did not properly consider his youth and attendant circumstances during sentencing.

¶ 5        In January 2020, the trial court summarily dismissed the petition as frivolous and patently without merit.

¶ 6        Defendant appeals, arguing that the trial court erred when it dismissed defendant's petition because (1) his guilty plea was involuntary "in light of recent changes in the jurisprudence surrounding emerging adults, like [defendant]," (2) the truth-in-sentencing statute, as applied to defendant, violated the proportionate penalties clause of the Illinois Constitution, and (3) defendant made an arguable claim that his guilty plea was involuntary because (a) it was secured by the threat of an unconstitutional natural life sentence and (b) his sentence grants no meaningful opportunity for release. Defendant also argues that the trial court erred because it relied on an unpublished order to dismiss defendant's petition. We affirm.

¶ 7                             I. BACKGROUND
¶ 8                            A. The Charges
¶ 9        In July 2014, the State charged defendant with two counts of murder pursuant to section 9-1(a)(1) of the Criminal Code (720 ILCS 5/9-1(a)(1) (West 2012)) and two counts of murder pursuant to section 9-1(a)(2) of the Criminal Code (*id.* § 9-1(a)(2)). The charges alleged that in June 2014, defendant, along with two others, beat Smith to death.

¶ 10                        B. The Guilty Plea Hearing
¶ 11       In September 2015, the trial court conducted defendant's guilty plea hearing. The court explained to defendant that, if convicted, he would (1) receive a sentence between 20 and 60 years in prison and (2) not be eligible for day-for-day credit under the truth-in-sentencing statute.

¶ 12       The trial court then discussed the terms of defendant's plea agreement with the State. The State agreed that if defendant testified against his codefendants and pleaded guilty to count II (*id.*), the State would (1) dismiss the remaining three counts, along with charges in three other felony cases pending against defendant in McLean County, (2) recommend a sentencing cap of 35 years in prison, instead of the 60 years authorized by statute, and (3) not pursue an enhanced prison term of natural life based upon a finding that the murder was committed in a brutal and heinous manner indicative of wanton cruelty.

¶ 13       After the trial court read the terms of the agreement regarding the "wanton cruelty" sentencing enhancement, the court asked the parties what they believed would happen if the enhancement was pursued. The State responded, "I believe it's mandatory natural life [in prison]." Defendant's counsel agreed. The court then told defendant that if the State proved at trial that the murder was committed in a brutal and heinous manner indicative of wanton cruelty, "You would have to serve the rest of your life."

¶ 14       The State read the factual basis for the crime, stating as follows:

> "That on June 2nd of 2014, Ronald Smith was transported to BroMenn hospital from the area of O'Neil Park and Sheridan School in Bloomington. He was taken there due to a severe beating that he had received at that location. About a month later, Ronald Smith passed away due to the injuries, and that was confirmed by an autopsy that was conducted in the McLean County coroner's office where the results in that autopsy was that Ronald Smith died as a result of the beating that he suffered on June 2nd of 2014.
>
> After being transported to the hospital on June 2nd, 2014, an investigation began. Numerous witnesses that were in and about the area of O'Neil Park on the day in question were interviewed. Several of those that were interviewed were eyewitnesses that indicated that the individuals that beat Ronald Smith included three people, which [*sic*] were Willie Chambers, [defendant,] and Anthony Davis-Dixon. Those witnesses indicated that essentially Ronald Smith was sleeping under a tree at O'Neil Park, Ronald Smith being a homeless individual at that time, and that the three codefendants approached him and punched, kicked, and stomped Ronald Smith numerous times.
>
> Subsequently, Anthony Davis-Dixon was arrested, as well as this defendant and Willie Chambers. A short time after the arrest of Anthony Davis-Dixon during one of his several interviews he admitted to being involved in the beating of Ronald Smith.

He indicated that he was the first person to knock Ronald Smith over and then further implicated his codefendants, that this defendant, as well as Willie Chambers, punched and kicked Ronald Smith many times.

Also, recently, as part of his plea in this case, Willie Chambers pled guilty to first degree murder in this case as well. At his plea hearing he testified under oath to his involvement in punching and beating Ronald Smith and also indicated that Anthony Davis-Dixon, as well as this defendant, participated as well."

¶ 15    Defendant pleaded guilty.

¶ 16                                C. The Sentencing Hearing

¶ 17    In April 2016, the trial court conducted defendant's sentencing hearing. Defendant presented letters that people wrote to the judge. The letters described (1) defendant's positive qualities, (2) difficulties in defendant's life, particularly his struggles with the death of his father when defendant was 14 years old, (3) defendant's potential, including his plans to join the military, and (4) how defendant was well-loved and deeply missed by his family. The court noted that it read and considered all of the letters.

¶ 18    Defendant's mother, Cynthia Stallings, testified about defendant's difficulties growing up, including his struggles due to her drug addiction. Cynthia also testified that defendant had "matured" while he had been in jail since his arrest. Cynthia asked for mercy for her son and described how he had told her many times about how remorseful he was and how he wished he could take back his actions.

¶ 19    The State recommended that the trial court sentence defendant to 35 years in prison. Defense counsel recommended a sentence of 20 years in prison.

¶ 20    Defendant made a statement in allocution in which he expressed his remorse and apologized to the victim's family, as well as to his own family and friends. Defendant said that he did not deny his part in the crime and also did not deny that he should be punished for it. He said, "I'm just taking on responsibility as a man, and I'm ready to move on with my life and show my nephews and my cousins and my sisters I can do better."

¶ 21    The trial court stated that it considered everything presented at the sentencing hearing, as well as the statutory factors in aggravation and mitigation. The court said, "I find myself figuratively just scratching my head trying to figure out why a young man, especially a young man with no real prior history, would choose to get involved in something this brutal, this violent, this wicked. I just don't understand it." The court noted that the evidence in mitigation as well as the people in the courtroom who came to support defendant "suggests that you're a young man with a lot of potential, with a lot of good character traits." The court characterized the people defendant was with the night of the murder as "a gang of thugs."

¶ 22    The trial court noted that "there is a great deal of mitigation in this case, primarily your youth, your lack of any prior criminal record, your childhood and *** all of the issues that you had to endure as a young man." Before stating its conclusion, the court again noted, "The Court also recognizes the mitigation, including the lack of prior record and the defendant's youth." The court then sentenced defendant to 32 years in prison.

¶ 23                          D. Defendant's Motions to Withdraw Guilty Plea
                                      and Reconsider Sentence

¶ 24         In April 2016, defendant filed (1) a motion to withdraw his guilty plea, arguing he did not knowingly and intelligently enter his guilty plea and (2) a motion to reconsider his sentence, arguing his sentence was "excessive and [d]efendant has rehabilitative potential."

¶ 25         In June 2016, the trial court conducted a hearing at which it began by acknowledging that the parties had raised an issue that "had to do with admonishments during the presentation of the plea of guilty." The State explained that defendant was incorrectly admonished at his guilty plea hearing that the sentencing enhancement that would result from a finding of wanton cruelty was mandatory life in prison, but "[t]hat admonishment was incorrect. The admonishment is actually that he would have been subject to up to natural life."

¶ 26         Defense counsel then informed the court, as follows: "Knowing [the incorrect admonishment] occurred, I continued to speak with [defendant], and it is his desire to withdraw both Motion to Withdraw Guilty Plea as well as the Motion to Reconsider Sentence."

¶ 27         The trial court told defendant that it was prepared to hear argument on both of the motions. The court also told defendant that "if you withdraw these motions, basically that precludes your right to appeal in this case."

¶ 28         Defendant persisted in his wish to withdraw the motions. Defendant did not file a direct appeal.

¶ 29                                E. The Postconviction Petition

¶ 30         In December 2019, defendant filed *pro se* a petition pursuant to the Post-Conviction Act (725 ILCS 5/122-1 *et seq.* (West 2018)), in which he argued that (1) the truth-in-sentencing statute was unconstitutional as applied to persons under the age of 21 at the time of the commission of the offense, such as defendant, (2) his guilty plea was involuntary because "he would not have pled guilty if he had understood the implications of the eighth amendment," and (3) the court did not properly consider his youth and attendant circumstances during sentencing.

¶ 31         In January 2020, the trial court summarily dismissed the petition as frivolous and patently without merit. In its written order, the court noted that defendant was not a juvenile because he was 19 years old at the time of the offense. The court disagreed that people between 18 and 21 years old could be "in the same category" as juvenile defendants. The court noted that the truth-in-sentencing statute was previously upheld by the courts, citing *People v. Cohn*, 2014 IL App (1st) 122562-U. The court concluded that defendant's argument was meritless because defendant "does not fall within the class of juvenile offenders which his authorities address" and "the constitutionality of the statute which *** defendant cites has already been considered and found constitutional." The court also concluded that the record showed defendant was admonished of his rights and had an understanding of those rights. Additionally, the sentence was within the range to which defendant agreed.

¶ 32         This appeal followed.

¶ 33                                     II. ANALYSIS

¶ 34         Defendant appeals, arguing that the trial court erred when it dismissed defendant's petition because (1) his guilty plea was involuntary "in light of recent changes in the jurisprudence

surrounding emerging adults, like [defendant]," (2) the truth-in-sentencing statute violated the proportionate penalties clause of the Illinois Constitution as applied to defendant, and (3) defendant made an arguable claim that his guilty plea was involuntary because it was secured by the threat of an unconstitutional natural life sentence and his sentence grants no meaningful opportunity for release. Defendant also argues that the trial court erred because it relied on an unpublished order to dismiss defendant's petition. We affirm.

¶ 35                 A. The Trial Court Properly Dismissed Defendant's Petition
             Because *Miller* and Its Progeny Do Not Apply to "Emerging Adults"

¶ 36    Defendant argues that the trial court erred by dismissing his petition when the court "did not consider recent jurisprudence that allows *Miller* and its progeny to be extended to emerging adults who demonstrate that their brain and maturity levels are still developing." See *Miller v. Alabama*, 567 U.S. 460 (2012) (holding mandatory life sentences imposed on juveniles violate the eighth amendment).

¶ 37                     1. *The Applicable Law:* Miller *and Its Progeny*

¶ 38    In *Miller*, the United States Supreme Court held "that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id.* at 470. In *People v. Holman*, 2017 IL 120655, ¶ 46, 91 N.E.3d 849, the Illinois Supreme Court stated that a court may sentence a juvenile defendant to life in prison in limited circumstances, writing as follows:

> "The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation."

However, in *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021), the United States Supreme Court clarified "that a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18."

¶ 39    In *People v. Harris*, 2018 IL 121932, ¶ 61, 120 N.E.3d 900, the Illinois Supreme Court noted "that claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected." The court agreed that "for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *Id.* The court concluded by rejecting defendant's facial constitutional challenge of his sentence. However, the court suggested that the defendant in that case could possibly pursue an as-applied constitutional challenge through alternative proceedings, such as a postconviction petition. *Id.* ¶ 48.

¶ 40    In *People v. Buffer*, 2019 IL 122327, ¶ 42, 137 N.E.3d 763, the Illinois Supreme Court held that a juvenile's sentence of 50 years was a *de facto* life sentence in violation of the eighth amendment. The court concluded "that a prison sentence of 40 years or less imposed on a

- 6 -

juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Id.* ¶ 41.

¶ 41                        2. *Defendant's Cases Are Inapplicable*

¶ 42    Defendant cites numerous cases, all of which are inapplicable to the facts of this case. All of defendant's cited cases involve a defendant who was either (1) an actual juvenile, (2) sentenced to a term of life or *de facto* life in prison, or (3) both. However, in this case, defendant was (1) not a juvenile and (2) sentenced to 32 years in prison, not a *de facto* life sentence.

¶ 43    Defendant in particular relies heavily on a series of First District decisions that involve defendants older than 17 years of age. The first is *People v. House*, 2019 IL App (1st) 110580-B, a case in which the defendant, age 19 at the time of the offense, was sentenced to mandatory natural life in prison. Obviously, this case is readily distinguishable from the facts in *House* because defendant was not sentenced to life in prison, or even a *de facto* life sentence.

¶ 44    Second, defendant cites *People v. Carrasquillo*, 2020 IL App (1st) 180534, a case in which the 18-year-old defendant was sentenced to an indeterminate sentence of between 200 and 600 years in prison. This is a *de facto* life sentence, making *Carrasquillo* clearly distinguishable from the case at hand. See *Buffer*, 2019 IL 122327, ¶ 27.

¶ 45    The remainder of defendant's authority is similarly easily distinguished. *Harris*, 2018 IL 121932 (76-year sentence); *People v. Thompson*, 2015 IL 118151, 43 N.E.3d 984 (natural life sentence); *People v. Savage*, 2020 IL App (1st) 173135 (85-year sentence); *People v. Brown*, 2015 IL App (1st) 130048, 31 N.E.3d 336 (50-year sentence). Every single case defendant cites in support of the notion that *Miller* could be applied to "emerging adults" involves sentences that are either natural life in prison or *de facto* life in prison. The State makes persuasive arguments disputing the merits of the holdings from the cases defendant cites, but because they are all inapposite, we need not discuss them further.

¶ 46    In short, defendant does not provide any case that has extended *Miller* to an offender who was not (1) a juvenile or (2) sentenced to a natural or *de facto* life sentence. We decline to be the first.

¶ 47    The trial court was correct to conclude that defendant's claim was frivolous and patently without merit.

¶ 48             B. The Truth-in-Sentencing Statute Was Constitutionally Applied

¶ 49    Next, defendant argues that his 32-year prison sentence, pursuant to section 3-6-3(a)(2)(i) of the truth-in-sentencing statute (730 ILCS 5/3-6-3(a)(2)(i) (West 2014)) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to defendant because of his developing brain and maturity levels. Defendant's argument again fails because all of his cited authority involves juveniles and natural life sentences or *de facto* life sentences.

¶ 50    "The proportionate penalties clause, which is similar to but not identical with the eighth amendment, provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 28, 25 N.E.3d 723 (quoting Ill. Const. 1970, art. I, § 11). "An as-applied challenge arises from a defendant's contention that the statute or law as

it is applied to his particular situation is unconstitutional." (Internal quotation marks omitted.) *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 44, 146 N.E.3d 254. The challenge depends upon the "particular circumstances and facts" of the defendant's case and requires the defendant to show how, based on those circumstances, "the statute violates the constitution." *Thompson*, 2015 IL 118151, ¶¶ 36-37.

> "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must construe a statute so as to uphold its constitutionality if reasonably possible. The constitutionality of a statute is a question of law subject to *de novo* review." *People v. Gray*, 2017 IL 120958, ¶ 57, 91 N.E.3d 876.

¶ 51 In support of defendant's position, he cites *Miller* and *Graham v. Florida*, 560 U.S. 48 (2010). Defendant notes in his brief that *Graham* held that juvenile *nonhomicide* offenders sentenced to *life without parole* must be given a meaningful opportunity for release. *Id.* at 75. Meanwhile, *Miller* held that *mandatory life* imprisonment without parole for those under the age of 18 violates the eighth amendment prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at 470. Defendant also cites *People v. Othman*, 2019 IL App (1st) 150823, 143 N.E.3d 32; however, that case is distinguishable because it involved a juvenile serving a *de facto* life sentence. Also, the portion of *Othman* that defendant relies upon has since been vacated. See *People v. Othman*, No. 125580 (Ill. Jan. 9, 2020) (supervisory order). Thus, none of defendant's cited cases stands for the proposition that the truth-in-sentencing statute is unconstitutional as applied to a person over the age of 18 who received a sentence other than life imprisonment.

¶ 52 Next, defendant argues that recent legislation shows that defendant's sentence violates the proportionate penalties clause. But defendant's argument defeats itself. Defendant notes that "legislation is the clearest and most reliable objective evidence of contemporary values." Defendant argues that new legislation that allows for parole for first degree murderers committed before the offender turned 21 demonstrates those contemporary values. See 730 ILCS 5/5-4.5-115(b) (West Supp. 2019). However, defendant notes, "The statute only applies prospectively *** and, therefore, was not in effect at the time of [defendant's] 2016 sentencing." Apparently, according to defendant, Illinois's contemporary values are reflected in the part of the new law allowing for parole but are not reflected in the part of the law stating that the law applies only to cases going forward. We disagree and conclude that the legislation provides absolutely no support for defendant's position. In fact, it shows the opposite—the legislature had the opportunity to make this law apply retroactively and chose not to, indicating that whatever "contemporary value" could be gleaned from the law does not extend to defendant's case.

¶ 53 No court in Illinois has ever concluded that a nonlife sentence for a nonjuvenile offender violated the proportionate penalties clause on the basis of the defendant's developing brain, and we will not be the first. Additionally, we note that a sentence of 32 years in prison for an adult who beat a vulnerable homeless man to death is entirely appropriate. Convicted murderers are often given sentences similar to the one in this case. Accordingly, the trial court was correct to conclude that defendant's claim was frivolous and patently without merit.

## C. Defendant Did Not Raise an Arguable Claim
## That His Guilty Plea Was Involuntary

¶ 55 Next, defendant contends that he made an arguable claim that his guilty plea was involuntary because it was secured by the threat of a life sentence that would have been constitutionally impermissible for a juvenile. See *Buffer*, 2019 IL 122327. In support, defendant cites *People v. Parker*, 2019 IL App (5th) 150192, a case in which the defendant, 16 years old at the time of his arrest and sentenced to 35 years in prison, successfully argued that he should be granted leave to file his successive postconviction petition. The defendant in *Parker* argued that "he would not have pled guilty to felony murder in exchange for a sentencing cap of 50 years if the guidelines set forth in *Buffer* were established at the time that he entered his guilty plea." *Id.* ¶ 18. The Fifth District was persuaded by the defendant's contention that he "pled guilty after being repeatedly admonished that he could receive a natural-life sentence, which, given the facts of the case and the issuance of *Buffer*, is no longer a reasonable threat." *Id.* The Fifth District reversed the trial court's decision and remanded for further postconviction proceedings. *Id.* However, *Parker* is again readily distinguishable from the case at hand—*Parker* involved a juvenile, whereas this case does not.

¶ 56 We further note that defendant had initially filed in the trial court motions to withdraw his guilty plea and reconsider his sentence but decided to withdraw both motions. Before he did so, the trial court specifically told defendant that "if you withdraw these motions, basically that precludes your right to appeal in this case." Defendant withdrew the motions anyway. We recognize that defendant's current argument is different from the one raised in the trial court; however, it is noteworthy that defendant was apparently sufficiently satisfied with the sentence he bargained for that he intentionally waived any arguments related to it.

¶ 57 Because defendant cites no case with facts remotely similar to the present case—namely, a case involving a defendant who was not a juvenile and was not sentenced to natural or *de facto* life in prison—we conclude that defendant's claim that his guilty plea was involuntary is frivolous and patently without merit. The trial court correctly dismissed the petition.

## D. The Trial Court's Reliance on an Unpublished Order
## Was Harmless Error

¶ 59 Last, defendant argues that the trial court improperly relied upon *People v. Cohn*, 2014 IL App (1st) 122562-U, an unpublished order. We agree that this was an error; however, because the trial court otherwise came to the correct conclusion, we conclude that this error was harmless.

## III. CONCLUSION

¶ 61 For the reasons stated, we affirm the trial court's judgment.

¶ 62 Affirmed.