NOTICE
Decision filed 12/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230390-U

NO. 5-23-0390

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 01-CF-1077 |
| | ) | |
| DANNY A. HARRIS, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's denial of defendant's postconviction petition is affirmed where the petition failed to make a substantial showing that the Truth in Sentencing Act violated the proportionate penalties clause as applied to him and postconviction counsel provided reasonable assistance to defendant and did not violate Rule 651(c).

¶ 2    Defendant, Danny Harris, appeals the trial court's dismissal of his postconviction petition, arguing that the petition made a substantial showing in that the Truth in Sentencing Act (730 ILCS 5/3-6-3(a)(2)(i) (West 2000)) violated the proportionate penalties clause as applied to him. He further argues that his postconviction counsel violated Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and provided unreasonable assistance. For the following reasons, we affirm.

1

¶ 3                                I. BACKGROUND

¶ 4      On August 25, 2001, defendant was charged, by information, with first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2000)). The information alleged that on May 20, 2001, defendant, without lawful justification and with the intent to kill, shot Michael Gibbs with a shotgun, causing Gibbs's death. The information was superseded by a criminal indictment on September 21, 2001.

¶ 5      On June 24, 2002, defendant pled guilty to the charge pursuant to a partially negotiated agreement in which the State agreed not to pursue a sentence in excess of 40 years' imprisonment. The trial court admonished defendant that he would be required to serve every day of his sentence, that without the agreement, he was facing between 20 and 60 years in prison and would be required to serve 3 years of mandatory supervised release (MSR).

¶ 6      The State provided a factual basis, consistent with defendant's statement to police, indicating that defendant, when he was 17 years old, entered an Amoco service station with his face covered and a sawed-off 12-gauge shotgun. Michael Gibbs, a long-standing Amoco employee, was behind the counter with another older employee, Ollie Smith. Defendant laughed, raised the shotgun, and announced he was robbing the station. Defendant shot Michael Gibbs once with a deer slug and Gibbs subsequently died from the injuries. Defendant then went behind the counter and took approximately $1,200 dollars. Defendant engaged in a struggle with Smith, during which defendant broke a bottle over Smith's head causing Smith to bleed. In his statement, defendant also indicated that the shotgun he used was from a previous residential burglary he committed. After the court admonished defendant of his rights, including an explanation that the Truth in Sentencing Act applied and that he would have to serve every day of the sentence with no

relief for good time behavior, defendant expressed his understanding. Following the admonishments, the court accepted defendant's plea.

¶ 7 The sentencing hearing was held on August 29, 2002. The presentence investigation report (PSI) showed that defendant was 17 when he committed the offense and last attended school in ninth grade. After defendant's father was killed in 1999, defendant withdrew from school and worked at Network Food Staffing from May 2000 through March 2001, and at Jakel Inc. as a motor assembler in June and July 2001. Before his arrest, defendant frequently used alcohol and marijuana. This was defendant's first and only interaction with the criminal system—juvenile or adult. Although the PSI noted two jail incidents, following the State's investigation, they were stricken from the PSI.

¶ 8 The State introduced testimony from Gibbs's son, Grafton Ward. Ward stated that he had recently repaired his relationship with his father and was bitter over his father's murder. Ward used alcohol and drugs to numb the pain, which hurt his family more. Gibbs's death also affected Gibbs's granddaughter, who missed her grandfather. The State submitted Ward's statement and a 12-gauge deer slug into evidence. Emphasizing defendant's actions at the Amoco store, his claimed laughter when he entered the store, the loss to Gibbs's family, and the deer slug used to shoot Gibbs, the State requested a 40-year sentence.

¶ 9 In mitigation, defendant presented testimony from his mother, Annette Russell, and paternal grandmother, Juanita Harris. Russell testified that defendant was a good child, who helped her at home, made money cutting grass, and cared for his younger sister. She explained that defendant's father was murdered and this hurt defendant deeply. Harris testified that defendant was a sweet and obedient child, who never gave them trouble. Both women stated that defendant was close to his father and his death devastated defendant, causing him to withdraw from his family

3

and his schooling. Defense counsel requested a 20-year sentence, emphasizing defendant's lack of criminal history, his young age, that he lost his own father to violence just two years earlier, his family support, his acceptance of responsibility, and the gravity of a 20-year sentence, which exceeded defendant's current age. In allocution, defendant prayed for forgiveness and apologized.

¶ 10 The court sentenced defendant to 40 years in prison and 3 years' MSR. In doing so, it noted, in mitigation, defendant's lack of criminal history, family support, and remorse. However, it found that the State's agreed sentencing cap of 40 years already encompassed a consideration of mercy and defendant's age. It said that defendant "destroyed a man's life" and harmed his family, that the shotgun came from a prior burglary, and "there [was] nothing worse than an armed robbery murder." The court stated that it wanted to send a message of deterrence so anyone considering such an offense would "know that they [were] going to either forfeit their life or they [were] going to forfeit the majority of their life in the penitentiary."

¶ 11 A series of postconviction matters followed, including a motion to vacate the guilty plea, which was dismissed following defendant's request to withdraw the motion, a motion to reduce sentence, which was dismissed in part and denied in part, and a postconviction petition based on trial counsel's alleged failings, which was amended by postconviction counsel and ultimately dismissed following a third-stage evidentiary hearing on January 20, 2005. Defendant appealed the postconviction decision raising only an issue related to sentencing credit. The trial court's judgment was affirmed via summary order on May 3, 2006. See *People v. Harris*, No. 5-05-0072 (2006) (unpublished summary order under Illinois Supreme Court Rule 23(c), (e)).

¶ 12 Thereafter, additional motions were filed, including a motion to vacate the order granting petitioner's motion to withdraw his first motion to withdraw his guilty plea. That motion was denied by the trial court due to a lack of jurisdiction on June 24, 2008. The decision was also

4

appealed but was ultimately dismissed by this court due to a lack of jurisdiction on December 17, 2008. See *People v. Harris*, No. 5-08-0388.

¶ 13    On January 28, 2016, defendant moved for leave to file a successive petition for postconviction relief based on an actual innocence claim. The motion for leave was denied on February 4, 2016. Defendant appealed the denial, and this court affirmed the denial on May 22, 2019. See *People v. Harris*, 2019 IL App (5th) 160094-U.

¶ 14    On September 22, 2020, defendant filed a second motion for leave to file a successive postconviction petition, which is the subject of the current appeal. Therein, defendant argued two issues. The first contended that his sentence for a crime committed when he was 17 years old was a *de facto* life sentence in violation of the eighth amendment because he was sentenced to 40 years in prison plus 3 years of MSR. The argument relied on *People v. Buffer*, 2019 IL 122327, and *People v. Whitfield*, 217 Ill. 2d 177 (2005). Defendant argued that he met the required cause and prejudice test because, as to cause, *Buffer* was not decided until 17 years after defendant's guilty plea and sentence. He further argued that he was prejudiced by the lack of any decision in *Buffer* because he only "pled guilty after being repeatedly admonished that he could receive the maximum sentence of 60 years in prison," which, after *Buffer*, was "no longer a reasonable threat."

¶ 15    Defendant's second issue contended that requiring him to serve every day of his sentence without the opportunity for good conduct credit or parole violated the proportionate penalties clause as applied to a juvenile like him. In support of this argument, he relied on *People v. Othman*, 2019 IL App (1st) 150823, vacated in relevant part, and Public Act 100-1182. As to cause for this claim, defendant argued that *Othman* was not decided when he filed either his initial or most recent petition for postconviction relief. He further argued that prejudice was shown because *Othman* found that the Truth in Sentencing Act was unconstitutional as to *Othman* "and similarly situated

5

juvenile" defendants and the Illinois Legislature passed Public Act 100-1182 stating that "most people who were under 21 when they committed their crime and [were] sentenced after the effective date of the Public Act, [were] now eligible for parole." Defendant attached his own affidavit, his guilty plea order, the judgment, his indictment, and his plea hearing transcript. The court granted leave to file the petition, docketed the case, and appointed counsel. Multiple continuances followed and new counsel was appointed twice.

¶ 16    In September 2021, defendant moved to amend his petition to claim that he would not have pled guilty if he had understood that a sentence greater than 40 years was a *de facto* life sentence for a juvenile offender, and that his 40-year sentence violated the proportionate penalties clause as applied to him because it was disproportionate to his culpability and did not comport with the objective of restoring him to useful citizenship. In February 2023, counsel filed a supplement, adding a third claim, asking the court to reconsider defendant's sentence based on the decision in *People v. Webster*, 2022 IL App (1st) 182305-U.[1] The claim contended that, like *Webster*, defendant was sentenced prior to case law determining 40 years was a *de facto* life sentence and, based on the transcripts, the sentencing court did not consider the *Miller* factors (*Miller v. Alabama*, 567 U.S. 460 (2012)).

¶ 17    The State moved to dismiss the postconviction petition. It argued that defendant did not receive a *de facto* life sentence and therefore could not state a claim under the eighth amendment. It further argued that defendant's attorney relied on defendant's youth and childhood trauma in seeking a 20-year sentence, thus, the *Miller* factors were considered. The State also argued that by entering a partially negotiated plea, defendant waived any claim for a resentencing hearing.

---

[1]The appellate court decision in *Webster* was reversed by the Illinois Supreme Court. See *People v. Webster*, 2023 IL 128428, ¶ 35.

6

¶ 18    On May 17, 2023, defense counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), stating:

> "1. I have consulted with the Defendant in person, by mail, by phone, or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;
>
> 2. I have examined the trial court file and the repo[rt]s of proceedings; and
>
> 3. I have made amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

That same day, the court granted defendant's September motion to amend his petition, again found cause and prejudice sufficient for defendant to file the successive petition, and heard arguments on the issues raised in defendant's initial petition, defendant's amended petition, and counsel's supplement. Following the hearing, the court took the matter under advisement.

¶ 19    On May 23, 2023, the court issued a written order dismissing defendant's petition. It found that (1) defendant's 40-year sentence was not a *de facto* life sentence and his 3-year MSR term did not change that; (2) the Truth in Sentencing Act was constitutional as applied to defendant; and (3) for the reasons in the State's motion to dismiss, *i.e.*, that it was a partially negotiated plea and any request for resentencing was waived, that defendant's third argument seeking resentencing based on *Webster*, 2022 IL App (1st) 182305-U, was meritless. Defendant appeals.

¶ 20                                    II. ANALYSIS

¶ 21    Defendant abandons his initial argument claiming a *de facto* life sentence and instead argues that his postconviction petition made a substantial showing that the Truth in Sentencing Act violated the proportionate penalties clause as applied to a 17-year-old defendant sentenced to

7

40 years in prison with no opportunity for release. He further argues, in the alternative, that his postconviction counsel failed to comply with Rule 651(c) and provided unreasonable assistance.

¶ 22                                    A. Truth in Sentencing

¶ 23    We start with the postconviction petition dismissal and truth-in-sentencing issue. When the trial court dismisses the petition without an evidentiary hearing, our review is *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). Similarly, consideration of a statute's constitutionality is a question of law subject to *de novo* review. *People v. Gray*, 2017 IL 120958, ¶ 57.

¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a collateral remedy for criminal defendants who claim a substantial denial of their constitutional rights stemming from the proceedings that resulted in their conviction. *People v. Addison*, 2023 IL 127119, ¶ 18. The Act provides three stages of review. *Id.* Here, defendant's claim passed to the second stage, at which time "the legal sufficiency of the petition" is tested and defendant "bears the burden of making a substantial showing of a constitutional violation." *People v. Domagala*, 2013 IL 113688, ¶ 35. At this stage, well-pleaded facts not positively rebutted by record are taken as true and "the question is whether those allegations establish *** a constitutional violation." *Id.*

¶ 25    Defendant contends that his petition made the substantial showing required to advance to a third-stage evidentiary hearing. He contends that the Truth in Sentencing Act (730 ILCS 5/3-6-3(a) (West 2002)) violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as it applied to him. The Truth in Sentencing Act provides a mechanism that allows certain convicted defendants an opportunity to reduce their sentences. For example, credits may be awarded for compliance with Department of Corrections rules and regulations; service to the institution, community, or state; or completion of educational programs. See 730 ILCS 5/3-6-3(a)(1.5), (4) (West 2024). Such allowances, however, are not available to all defendants and there

8

are limits to the length of sentence credit available. See *id.* § 3-6-3(a)(2). Relevant here is the statutory preclusion for any sentence credit when the conviction is for first degree murder. *Id.* § 3-6-3(a)(2)(i) ("a prisoner who is serving a term of imprisonment for first degree murder *** shall receive no sentence credit and shall serve the entire sentence imposed by the court"). There are no exceptions for first degree murder. *Id.* The truth-in-sentencing statute has been found constitutional for first degree murder. See *People v. Johnson*, 2020 IL App (2d) 170646, ¶¶ 10-14; *People v. Washington*, 2021 IL App (4th) 200196, ¶¶ 49, 53 (concluding defendant's 32-year prison sentence for murder did not violate the proportionate penalties clause and noting the sentence was "entirely appropriate").

¶ 26     Defendant argues that the statute violates the proportionate penalties clause as applied to him because he was a juvenile when the murder occurred. While defendant is no longer arguing that his sentence is a *de facto* life sentence, he relies on *Miller* and its progeny to claim that the truth-in-sentencing act is unconstitutional as applied to him based on his age at the time of the crime. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Defendant argues that although Illinois law has evolved as to juvenile sentencing in the last 20 years due to *Miller v. Alabama*, 567 U.S. 460, 479-80 (2012), the denial of any sentencing credit for the crime of first degree murder with no consideration of defendant's potential to rehabilitate violates the proportionate penalties clause.

¶ 27     Similar arguments have been presented to the appellate courts and rejected where the sentence was not a *de facto* life sentence or the trial court considered defendant's age in imposing the sentence. See *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 60 (17-year-old defendant's sentence of 30 years' imprisonment and application of truth in sentencing did not violate the

9

proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) or the eighth amendment to the United States Constitution (U.S. Const., amend. VIII)); *People v. Banks*, 2015 IL App (1st) 130985, ¶¶ 22-24 (same result for 19-year-old defendant with sentence of 45 years' imprisonment); *Johnson*, 2020 IL App (2d) 170646, ¶¶ 11-16 (same result for juvenile with 27-year sentence of imprisonment); *Washington*, 2021 IL App (4th) 200196, ¶¶ 49-53 (same result for juvenile with 32-year sentence of imprisonment); and *People v. Hill*, 2022 IL App (2d) 200416, ¶¶ 35-41 (17-year-old defendant with 48-year prison sentence). We find the reasoning provided in those decisions reasonable. However, even if other cases reached a contrary conclusion, the Illinois Supreme Court decision in *People v. Dorsey*, 2021 IL 123010, ¶ 64, now precludes those contrary conclusions unless the juvenile's sentence was greater than 40 years, which here, it is not. Further, the Illinois Supreme Court's decision in *People v. Hilliard*, 2023 IL 128186, ¶¶ 27, 38-39, refused to find *Miller* and its progeny supportive of a proportionate penalties clause claim that did not involve a mandatory life sentence.

¶ 28    As noted above, defendant's sentence is not a life sentence. *Miller* and its progeny apply only to life sentences and cases involving *Miller* claims for young adult offenders do not provide support for proportionate penalties clause claims concerning non-life sentences. See *Hilliard*, 2023 IL 128186, ¶ 27; see also *People v. Watson*, 2022 IL App (1st) 192182, ¶ 27 ("*Dorsey* makes plain, as we observed in *Brakes*, that *Miller*-based claims cannot survive when the substantive sentence is not a *de facto* life sentence."); *People v. Brakes*, 2021 IL App (1st) 181737, ¶ 42 ("a juvenile defendant's sentence (whether served at 100%, 85%, or 50%) may be subject to a constitutional challenge [under *Miller*] only if it will keep the juvenile in prison for more than 40 years"); *People v. Schultz*, 2022 IL App (1st) 200919-U, ¶ 49 ("the question is not whether a defendant must serve

10

his or her sentence at 100% (or 85% or 50%); instead, we look only to whether the actual time served will amount to a *de facto* life sentence").

¶ 29    "[O]ur supreme court held that a prison sentence of 40 years or less for a juvenile offender gives him some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation as required under *Miller*." *Hill*, 2022 IL App (2d) 200416, ¶ 36. *Hill* also recognized that

> "The truth in sentencing statute did not constrain the trial court, for had it determined that defendant should have a lower total sentence, it could have simply imposed a lower term of imprisonment. The proportionate penalties clause requires us to consider both the 'seriousness of the offense' and 'the objective of restoring the offender to useful citizenship' (Ill. Const. 1970, art. I, § 11), and 'there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty.' " *Id.* ¶ 41 (quoting *People v. Taylor*, 102 Ill. 2d 201, 206 (1984)).

¶ 30    Here, the issue of defendant's age, maturity, and potential for rehabilitation was placed before the trial court at sentencing. Considering that defendant walked into a service station with a mask and sawed-off 12-gauge shotgun, laughed at the employees when he announced his intention to rob the business, and senselessly shot one of the employees who later died, for an approximate $1,200 gain, we cannot find that his 40-year sentence was so cruel, degrading, or wholly disproportionate to the offense as to shock the moral sense of the community. Therefore, we conclude that the truth in sentencing statute does not violate the proportionate penalties clause as applied to defendant.

11

¶ 31                       B. Ineffective Assistance of Postconviction Counsel

¶ 32     Defendant also argues, in the alternative, that his postconviction counsel provided unreasonable assistance and violated Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) obligations. In support, defendant contends that postconviction counsel failed to attach supporting documentation of his rehabilitative potential for the Truth in Sentencing Act claim, added an excessive sentencing claim that was not a cognizable claim under the Post-Conviction Hearing Act, and further failed to support the excessive sentence claim with evidence.

¶ 33     "In a postconviction proceeding, there is no constitutional right to the assistance of counsel." *People v. Addison*, 2023 IL 127119, ¶ 19. The petitioner is entitled only to a reasonable level of assistance granted by law, which is less than federal and state constitutions require. *Id.* Supreme Court Rule 651(c) was promulgated to ensure that a postconviction petitioner received that level of assistance. *Id.* ¶ 20. Rule 651(c) provides:

> "The record filed in that [trial] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 34     Mandatory compliance with the rule is required, "but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises." *Addison*, 2023 IL 127119, ¶ 21. The burden of rebutting that presumption lies with the defendant, which requires a showing that postconviction counsel failed to comply with the rule. *Id.* If it is shown that counsel

12

failed to fulfill any Rule 651(c) requirement, remand is necessary regardless of the petition's merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). We review *de novo* whether postconviction counsel performed reasonably and in compliance with Rule 651(c). *Id.* at 41-42.

¶ 35    There is no dispute that postconviction counsel filed a facially valid Rule 651(c) certificate triggering the presumption of reasonable assistance. In support of his argument that the record rebuts the presumption, defendant claims that postconviction counsel failed to make the amendments necessary to shape the *pro se* petition into proper legal form. In support, defendant argues that postconviction counsel failed to attached copies of defendant's rehabilitation while incarcerated.

¶ 36    Defendant misinterprets the requirements of section 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2024)). While the statute requires supporting documentation in the form of affidavit or other evidence, such requirement is only for cases where the petitioner's allegations are contradicted or not clearly supported by the record. *People v. Johnson*, 183 Ill. 2d 176, 191 (1998); *People v. Bowlby*, 2021 IL App (5th) 190334-U, ¶ 23.

¶ 37    Here, defendant's claim relies purely on two facts: defendant's age at the time the crime was committed and the evolution of law sentencing juveniles. The former is uncontradicted and supported by the record. The latter is supported by the case law cited in defendant's petition. Further, evidence of defendant's accomplishments since incarcerated is found in the record. While defendant claims it should have been attached to the petition, we disagree. Defendant's certificates of completion provide no support for his claim that he should be afforded an opportunity to be released before serving the full 40-year sentence because of youth. The issue is not whether defendant is rehabilitated but whether his rehabilitative potential as a juvenile requires that he should have an opportunity to be released prior to serving his full sentence. As the documentation

13

is irrelevant to the issue posed, we cannot find that postconviction counsel provided unreasonable assistance by failing to submit irrelevant documentation.

¶ 38 Defendant also argues that postconviction counsel provided unreasonable assistance by adding a claim to the petition that requested reversal of defendant's sentence. We also find this argument unpersuasive. Postconviction counsel's additional claim was based on *Webster*, 2022 IL App (1st) 182305-U. In *Webster*, the appellate court remanded the case back to the trial court to allow it to reconsider the sentence in light of the new more than 40-year *de facto* life sentence enunciated in *Buffer*, 2019 IL 122327, ¶ 40, and the trial court's language during sentencing acknowledging defendant's rehabilitative potential. *Webster*, 2022 IL App (1st) 182305-U, ¶¶ 42-43. While the appellate court decision was ultimately reversed by our supreme court in *People v. Webster*, 2023 IL 128428, ¶ 32, the reversal did not occur until November 30, 2023. By that time, the trial court had issued its ruling on defendant's successive postconviction petition and defendant had appealed the ruling. Here, as in *Webster*, the trial court ordered the most severe, constitutional sentence despite acknowledging defendant's rehabilitative potential as well as other factors in mitigation. We cannot find postconviction counsel's actions unreasonable when case law supported filing the claim at the time it was filed and remained persuasive authority until the Illinois Supreme Court's reversal in November 2023.

¶ 39 Defendant also argues the claim was unreasonable because excessive sentence challenges are not constitutional claims and therefore are incognizable under the Post-Conviction Hearing Act. Although *Webster* was ultimately reversed, we cannot say that an excessive sentence argument may never be a basis for a constitutional challenge under the Act. As such, we reject defendant's argument.

14

¶ 40    Nevertheless, even if we construed the additional claim as improper under the Post-Conviction Hearing Act, we still cannot find the claim's addition was unreasonable. The reasonableness standard requires a showing of prejudice. See *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37 ("if postconviction counsel's performance cannot be deemed deficient under *Strickland*, it cannot be said that counsel failed to provide the reasonable level of assistance required under the Act"). Here, no prejudice can be shown by postconviction counsel filing an amended claim based on persuasive authority involving similar circumstances and facts regarding the defendants at their sentencing hearings.

¶ 41    Finally, defendant also contends that postconviction counsel was unreasonable because he failed to attach supporting documentation related to defendant's rehabilitation potential to the excessive sentence claim. Defendant argues that this failure violates Rule 651(c). However, for the reasons as set forth above, the argument fails. More specifically, here, the claim was based on *Webster*, and the unattached documentation showing the certificates defendant received while imprisoned had no bearing on those facts or the claim. Accordingly, we deny defendant's claim that postconviction counsel provided unreasonable assistance.

¶ 42                                III. CONCLUSION

¶ 43    For the above-stated reasons, we affirm the trial court's dismissal and denial of defendant's postconviction petition and further hold that postconviction counsel provided reasonable assistance and did not violate Rule 651(c).


¶ 44    Affirmed.